DAVID K. JONES vs. TOWN OF WAYLAND & others.[1]

Middlesex. November 8, 1979. — March 7, 1980.

Present: HENNESSEY, C.J., QUIRICO, WILKINS, LIACOS, & ABRAMS, JJ.

Police, Incapacity, Municipality's liability, Retirement. Pleading, Civil, Amendment. Practice, Civil, Declaratory relief.

On remand of an action from this court, it was within the judge's discretion to allow the plaintiff to amend his complaint where there was no undue delay, bad faith or dilatory motive on the part of the plaintiff and the defendant was not unduly prejudiced by the allowance of the amendment. [114-117]

A judge in an action for a declaratory judgment did not abuse his discretion in ordering the defendant town to rule on the plaintiff's application for compensation pursuant to G. L. c. 32, § 85H, prior to ruling on the plaintiff's motion to amend his complaint in order to state a claim under c. 32, § 85H. [117-118]

In an action by a former special police officer seeking a declaration that he was entitled to the compensation benefits afforded by G. L. c. 32, § 85H, the judge erred in concluding that the plaintiff's "regular occupation" as defined by § 85H consisted of his work as a police officer; "regular occupation" in the context of c. 32, § 85H, means employment distinct from that as a police officer or firefighter. [118-120]

In an action by a plaintiff seeking a declaration that he was entitled to the retirement benefits afforded by G. L. c. 32, § 85H, a decision by the town that the plaintiff was not eligible for such benefits was not an abuse of discretion. [120-122]

BILL IN EQUITY filed in the Superior Court on March 22, 1972.

After the decision of this court reported in 374 Mass. 249 (1978), the case was remanded to the Superior Court, where a motion to amend the complaint and motions for summary judgment were heard by Sullivan, J.

[1] The board of selectmen, accountant and treasurer of the town of Wayland were also named as defendants.

The Supreme Judicial Court granted a request for direct appellate review.

*C. Peter R. Gossels* for the defendants.

*Robert S. Wolfe* for the plaintiff.

ABRAMS, J.   On remand from this court,[2] the plaintiff David K. Jones, a former special police officer in the town of Wayland, moved to amend his complaint to seek a declaration that the town must provide him with the retirement and compensation benefits afforded by G. L. c. 32, § 85H.[3]   Rather than rule immediately on Jones' motion to

---

[2] Our prior opinion held that G. L. c. 41, § 111F, requires that a leave without loss of pay must be granted to any police officer, special as well as regular, "incapacitated for duty because of injury sustained in the performance of his duty without fault of his own." See *Jones* v. *Wayland,* 374 Mass. 249, 255-257 (1978).   Therefore, under § 111F, Jones was entitled to be paid an amount equal to the amount he would normally have made as a police officer had he not been incapacitated.   In Jones' case this amounted to a substantial sum, since he had been devoting more than forty hours per week to his duties as a special police officer.   We also held, however, that Jones' voluntary resignation, when accepted by the town approximately four months after his injury, terminated his eligibility for further benefits under § 111F.   *Id.* at 263-264.

[3] General Laws c. 32, § 85H, as amended through St. 1970, c. 382, §§ 1-2, provides: "The selectmen of every town may retire from active service any call fire fighter or reserve, special or intermittent police officer who becomes permanently disabled mentally or physically by injuries sustained through no fault of his own in the actual performance of duty as such fire fighter or policeman.   A person so retired shall receive an annual pension equal to two thirds of the annual rate of compensation payable to a regular or permanent member of the police or fire force, as the case may be, thereof for the first year of service therein, and if there are no permanent members of such force an annual pension in the sum of three thousand dollars.   Whenever a call fire fighter or any member of a volunteer fire company in a town whose service as such has been approved by the board of selectmen of such town or reserve or special or intermittent police officer of a town, or a reserve police officer or reserve or call fire fighter of a city is disabled because of injury or incapacity sustained in the performance of his duty without fault of his own, and is thereby unable to perform the usual duties of his regular occupation at the time such injury or incapacity was incurred, he shall receive from the city or town for the period of such injury or incapacity the amount of compensation payable to a permanent member of the police or fire force thereof, as the case may be, for the first year of service therein, or if there are no regular or permanent members of the police or fire force thereof, at the rate of three thou-

amend, the judge on remand allowed Jones to apply to the town's board of selectmen for compensation pursuant to G. L. c. 32, § 85H, and "ordered" the selectmen to rule on this application.

Section 85H provides two forms of benefits. In a mandatory provision, compensation (generally equal to the current first year salary of a regular police officer) must be paid to any special police officer who is "disabled because of . . . incapacity sustained in the performance of his duty without fault of his own," and who is therefore "unable to perform the usual duties of his regular occupation." In addition, § 85H provides that a town "may retire" a special police officer who becomes "permanently disabled" due to "injuries sustained through no fault of his own in the actual performance of duty."

In his application to the selectmen, Jones asked to be granted those "benefits" available under § 85H; no distinction was made between permanent retirement benefits and temporary compensation for the inability to perform his "regular" occupation.

After meeting with Jones and his attorney, the selectmen denied Jones' application, and, with separate reference to both the retirement and compensation benefits available under § 85H, specified their reasons for doing so.[4]

---

sand dollars per annum; provided, that no such compensation shall be payable for any period after such police officer or fire fighter has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such city or town determines that such incapacity no longer exists. All amounts payable under this section shall be paid at the same time and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer or fire fighter. No town shall pay compensation under this section if insurance providing coverage for such compensation is in effect therefor under clause (1) of section five of chapter forty, unless and until all rights under such insurance in favor of such town shall have been exercised, determined and satisfied."

[4] With regard to compensation benefits, the selectmen stated that Jones' voluntary resignation terminated his eligibility. With regard to retirement benefits, the selectmen also contended that Jones' resignation elimi-

Wayland then moved that judgment be entered that, pursuant to G. L. c. 41, § 111F, the statute under which Jones had initially sought benefits,[5] the town was liable to Jones in the amount of $244.35. There is no dispute as to the accuracy of this figure. Rather than entering judgment under § 111F, however, the judge allowed Jones' motion to amend his complaint by adding a claim for relief under G. L. c. 32, § 85H. Jones then moved for summary judgment on this amended complaint; subsequently, Wayland also moved for summary judgment. Jones' motion was allowed, and Wayland's denied. Based on the first year salary of permanent Wayland police officers[6] over the period, December 1, 1970, to January 31, 1978, Wayland was ordered to pay Jones $84,069.66 plus interest. From this amount the judge ordered deducted $975.66 in employment compensation and $1,000 in insurance indemnity payments found to have been made to Jones. Wayland was ordered to make continuing compensation payments to Jones "in accordance with the terms" and "subject to the limitations" of § 85H. Finally, since in the judge's view the Legislature could not have intended that a person in Jones' position recover under both § 111F and § 85H, the town was found to have no liability to Jones under § 111F. Wayland appealed from the judgment, and we granted the town's motion for direct appellate review.

nated his right to obtain such benefits. Furthermore, they stated that if they had discretion to award retirement benefits to Jones, they would decline to do so on the basis that (1) no money had been appropriated for this purpose; (2) Jones had waited seven years after his voluntary resignation before applying for such benefits; (3) Jones had not sought medical treatment for his disability on an ongoing basis since the time of his injury; (4) Jones had provided the town with no new information regarding his disability since the time the town accepted his resignation; and (5) "the Selectmen believe that the Town has paid its debt to Mr. Jones in full" in view of the fact that all medical expenses related to Jones' injury were paid by the town, six thousand dollars was paid to Jones under the group health and accident insurance policy funded by the town, and an additional amount would be paid to Jones when judgment was entered under G. L. c. 41, § 111F.

[5] See Jones v. Wayland, 374 Mass. 249 (1978).

[6] See note 3, supra.

Wayland attacks the trial judge's decision on three distinct bases.[7]  First, Wayland argues that the judge on remand improperly allowed Jones to amend his complaint to include a claim under § 85H.  Similarly, the town maintains that the judge had no authority to "order" the selectmen to vote on Jones' application for § 85H benefits.  And finally, assuming that the § 85H claim was properly before him, the judge is said to have erred in awarding compensation benefits pursuant to G. L. c. 32, § 85H.  We consider each of these arguments in turn, rejecting the first and second, but accepting the third.[8]

1. *Amendment of Jones' complaint.*  Wayland contends that by allowing Jones' motion to amend his complaint in order to state a claim under G. L. c. 32, § 85H, the trial judge abused his discretion.[9]  We disagree.

---

[7] The case was decided below on cross motions for summary judgment. Neither party accepted the judge's invitation to submit additional evidence to supplement the findings of fact set forth in our prior opinion in this case.  Since there is no dispute as to any material fact, we, like the trial judge, must decide whether either party is entitled to judgment as a matter of law.  Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).  See *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 556 (1976).

[8] Jones argues that Wayland's failure to answer his amended complaint precludes the town from asserting on this appeal all defenses other than that the court below lacked subject matter jurisdiction.  See Mass. R. Civ. P. 12 (b) and 12 (h), 365 Mass. 755, 757 (1974).  While Wayland's counsel lends credence to this theory by attempting to cloak what amount to arguments on the merits in "jurisdictional" terms, his concern to do so *is misplaced.*  The decision at issue here was not reached on the basis of the pleadings, or at a trial based on these pleadings, but rather on cross motions for summary judgment.  Failure to file an answer does not preclude success on a timely motion for summary judgment.  While the practice may not commend itself as a model litigation technique, Wayland was free to decline to file an answer, and to instead rely entirely on its motion for summary judgment.  The parties here and the judge below have all addressed the issues Wayland raises on their merits, and we shall do so also.

[9] Wayland also claims that our prior opinion itself precluded any amendment of the plaintiff's complaint on remand.  This argument is without merit.  The case was remanded not for the entry of judgment pursuant to G. L. c. 41, § 111F, as Wayland claims, but for "further proceedings consistent with this opinion."

Although the issue of leave to amend on remand under Mass. R. Civ. P. 15(a), 365 Mass. 761 (1974), has never been decided by this court, we have held under prior law[10] that "[t]he Superior Court has the power in its discretion, even after rescript, to permit amendments in matters of form or substance . . . ." *Fram* v. *Boston,* 363 Mass. 68, 73 (1973). See *Commonwealth* v. *National Contracting Co.,* 201 Mass. 248, 250 (1909); *Crossman* v. *Griggs,* 188 Mass. 156, 160 (1905) (amendment allowed within discretion of trial judge even where instruction on remand was, "Bill dismissed," because this instruction was not a final decree which precluded further action in this case); *Terry* v. *Brightman,* 133 Mass. 536, 537 (1882). Rule 15 was not intended to make existing pleading rules more restrictive; under rule 15, "the expressed tendency is in favor of allowing amendments," *Castellucci* v. *United States Fidelity & Guar. Co.,* 372 Mass. 288, 289 (1977).

The Federal courts, construing identical language in Rule 15 (a) of the Federal Rules of Civil Procedure, have specifically concluded that "[t]he fact that [a motion to amend] was tendered after remand . . . for further proceedings does not change the rule" that leave to amend shall be freely granted whenever appropriate. *Retail Clerks Int'l Ass'n* v. *Lion Dry Goods, Inc.,* 341 F.2d 715, 722-723 (6th Cir.), cert. denied, 382 U.S. 839 (1965). See *Guse* v. *J.C. Penney Co.,* 570 F.2d 679, 680 (7th Cir. 1978); *Modrey* v. *American Gage & Mach. Co.,* 478 F.2d 470, 473 n.4 (2d Cir. 1973). See also 6 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1488 (1971).

We conclude that a trial judge on remand still possesses, as a general matter, broad discretion to allow any appropriate amendment. The only remaining question is whether,

---

[10] General Laws c. 231, § 51 (as in effect prior to July 1, 1974), provided in part that an "amendment in matter of form or substance in any . . . pleading, which may enable the plaintiff to sustain the action for the cause for which it was intended to be brought" might be allowed "at any time before final judgment."

on the particular facts of this case, the granting of Jones' motion to amend constituted an abuse of this discretion.

The trial judge, in his memorandum of opinion allowing Jones' motion to amend, carefully noted the factors we have said are among those which might justify[11] denial of a motion to amend, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Castelluci* v. *United States Fidelity & Guar. Co., supra* at 290, quoting from *Foman* v. *Davis,* 371 U.S. 178, 182 (1962). The judge found no indication that Jones had been unduly lax in moving to amend or had acted either in bad faith or with a dilatory motive. These conclusions are amply supported by the record.

The judge also found that Wayland was not unduly prejudiced by his allowance of Jones' amendment. Counsel for Wayland maintained to the trial court on remand that no additional evidence need be heard in order to decide Jones' § 85H claim. Moreover, given the nearly complete overlap between those facts relevant to § 85H and those relevant to § 111F, any possible hardship that Wayland might conceivably have suffered due to the necessity of introducing new evidence is so slight as to fail to constitute sufficient prejudice to require denial of Jones' motion to amend. See 6 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1487 (1971).

Finally, Wayland contends that the motion to amend was improperly allowed because it failed to state a claim upon which relief could be granted. Wayland notes that, at the time the motion was first made, Jones had not specifically applied to the town for § 85H benefits. Therefore, Wayland urges, since Jones had not, in its view, exhausted his

---

[11] Since to do so is unnecessary to a decision in this case, we intimate no view as to whether the existence of any or all of these factors might require as well as justify a denial.

administrative remedies, the proposed amendment failed to state a claim upon which relief could be granted. This argument, however, simply ignores the fact that the amendment in this case was allowed only after Jones had been denied § 85H benefits by the town.

2. *Order to selectmen.* Wayland also argues that the trial judge had no authority, prior to allowing Jones to amend his complaint, to order the Wayland selectmen to rule on Jones' application for G. L. c. 32, § 85H, benefits. Wayland notes that the trial court's jurisdiction was grounded on the statute authorizing declaratory judgment actions, G. L. c. 231A, § 1, which requires that there be "an actual controversy . . . specifically set forth in the pleadings." See *Publico* v. *Building Inspector of Quincy,* 336 Mass. 152, 155 (1957); *Massachusetts Ass'n of Independent Ins. Agents and Brokers, Inc.* v. *Commissioner of Ins.,* 373 Mass. 290, 292 (1977). Prior to Jones' amendment of his complaint, Wayland urges, no such controversy existed as to § 85H benefits, and therefore the trial judge in a declaratory judgment action had no authority to order the town to rule on Jones' application for these benefits.

Whatever may be the merits of this argument, however, any conceivable error on the part of the trial judge in issuing his "order" can only be described as harmless. No written order was issued. The judge said, "I'm going to, in effect, give the town until the meeting of the 20th or the 27th [of March, 1978] to vote [the § 85H benefits] up or down." We think that the judge's actions amounted to no more than a sound exercise of discretion in delaying any further action so as to see whether Wayland might take such actions as would render any § 85H claim moot. The third and fourth sentences of § 85H relied on by the judge in granting summary judgment to Jones specify that a town "shall" provide compensation payments to certain special police officers injured in the line of duty. There is no requirement that an individual seeking benefits under this portion of § 85H must formally request them. In light of this mandatory language, if Jones was indeed one of those officers properly within the

scope of the statute, Wayland had no option but to make the payments called for by this portion of § 85H. The town cannot now be heard to complain that it was prejudiced by being "ordered" to decide whether or not it would comply with the requirements of State law.

3. *Compensation benefits.* The judge below declared Jones to be a "statutory beneficiary" of the compensation benefits created by the third and fourth sentences of G. L. c. 32, § 85H. See note 3, *supra.* The judge determined that Jones' "regular occupation" at the time of his injury consisted of his work as a special police officer. We conclude that the statute does not permit such an interpretation of the term "regular occupation."

In reaching this conclusion we are guided by the principle that individual statutory provisions related to the same general area must be read "as a whole . . . to the end that, as far as possible, the [entire legislative program] will constitute a consistent and harmonious whole." *Haines* v. *Town Manager of Mansfield,* 320 Mass. 140, 142 (1946). We have previously held that G. L. c. 41, § 111F, requires that all qualifying police officers, special as well as regular, incapacitated for police work as the result of an injury sustained in the line of duty through no fault of their own, must be granted leave without loss of pay for so long as they are unable to perform their police duties. *Jones* v. *Wayland,* 374 Mass. 249, 255-257 (1978). We therefore construe § 85H so that its disability and retirement benefits are consistent with the paid leave benefits of § 111F.[12]

Under § 111F, qualifying police and firefighters continue to receive their normal police or firefighting pay. While

---

[12] The original versions of § 85H and G. L. c. 41, § 111F, were enacted on the same day of the 1952 legislative session. See St. 1952, c. 431, § 2, and c. 419. Furthermore, the present third and fourth sentences of § 85H, the meaning of which constitutes the central issue on this appeal, result from a 1954 amendment to § 85H that redrafted the compensation provisions of the statute by incorporating language identical to that appearing in § 111F. St. 1954, c. 633. "[I]f possible a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law." *Hadley* v. *Amherst,* 372 Mass. 46, 51 (1977).

this sum may amount to a full weekly pay check in the case of a regular officer, it may also be the far smaller sum earned by a special officer who worked only a few hours per week prior to his injury.

We believe that § 85H reflects legislative concern over the adequacy of benefits afforded by § 111F to certain public safety officers injured in the line of duty. The "reserve, special and intermittent police" and "call fire fighters" covered by § 85H represent those public safety officers most likely to be reliant on other jobs as their primary source of income. The compensation benefits of § 85H, we conclude, are designed to compensate these officers for the inability to perform such other work.[13] Read in this light, "regular occupation" means employment distinct from that as a police officer or firefighter.

The policy behind such a compensation plan is clear: those individuals willing to submit themselves to the dangers inherent in police and fire work while still looking to another job as a substantial source of support should not be made to suffer economically in the event that they are rendered incapable of performing this other employment due to an injury sustained while serving as a public safety officer.

Furthermore, by providing such compensation benefits the Legislature has also assured that towns which rely on the services of part-time public safety officers will be able to recruit such persons. Finally, by providing any such officer injured in the line of duty with possible eligibility under both § 111F and § 85H, the Legislature has discouraged the indiscriminate use of such special officers in lieu of regular police and firefighters.

Our construction gives full effect to both § 85H and 111F and their differing legislative goals. We read these provi-

---

[13] Rather than calculating the precise amount of income lost due to an officer's inability to perform such other work on a case by case basis, the Legislature has chosen the rough but equitable solution of determining § 85H compensation benefit payments by reference to a fixed amount: the first year salary of a permanent police officer or fire fighter. See note 3, *supra.*

sions as complementary. While § 111F requires a showing that the officer is "incapacitated for [police or firefighting] duty," eligibility for § 85H compensation benefits turns instead on the injured officer's ability to perform the "usual duties of his regular occupation." Since we conclude that "regular occupation" cannot be police or fire duty, we avoid the incongruous result, encountered by the trial judge, of the statutes overlapping in such a way that a special officer who had lost only one job might claim benefits under both § 85H and § 111F.[14]

Construing § 85H in this manner, we necessarily reject the conclusion of the trial judge that David Jones' "regular occupation" as defined by § 85H consisted of his work as a police officer.[15] Jones therefore cannot be entitled to § 85H compensation benefits.[16]

4. *Retirement benefits.* Since Jones claims generally that he is entitled to benefits under G. L. c. 32, § 85H, we also consider his eligibility for the retirement benefits created by the first two sentences of the statute. We note, furthermore, that in the prior appeal to this court, Wayland's present counsel stated, "Wayland is even prepared to concede that Jones may be eligible for disability retirement under G. L.

---

[14] Our construction also avoids an additional incongruity. Under the judge's reading of the statute, a qualifying special police officer who had worked only part-time and who had no other regular occupation would be entitled to receive § 85H compensation benefits equal to the full-time salary of a regular officer. We do not believe the Legislature intended such a result.

[15] While we conclude that "regular occupation" refers to work other than that compensable under G. L. c. 41, § 111F, we have no occasion on the facts of this case to determine the precise extent to which such work must constitute the injured person's means of support. It is enough to note here that the high level of compensation fixed by the statute (the full-time salary of a permanent member of the town's police or fire department) indicates that the "regular" employment whose loss § 85H is intended to offset must have constituted at least a substantial source of income. No indication appears on the record before us that Jones, at the time of his injury, held any such substantial nonpolice employment.

[16] Since we hold that Jones is not entitled to benefits under § 85H, we intimate no view on Wayland's argument that Jones' voluntary resignation terminated his eligibility for § 85H compensation benefits.

c. 32, § 85H." Brief for Town of Wayland at 66. *Jones* v. *Wayland*, 374 Mass. 249 (1978). See also brief at 50 and 63.[17]

In contrast to the mandatory language creating both the temporary compensation benefits of § 85H and the paid leave of § 111F, § 85H provides that a town "may" retire any police officer or firefighter meeting the statutory qualifications.

In addition to the discretion suggested by this statutory language, deference to local decisions awarding or denying § 85H retirement benefits is called for by the role which these benefits play in relation to the compensation benefits created by the third and fourth sentences of § 85H and the paid leave mandated by § 111F.

Unlike either the § 85H compensation benefits or the paid leave benefits of § 111F, § 85H retirement benefits continue for so long as the injured party lives, and are conditioned upon a finding that the recipient is "permanently disabled." This finding, furthermore, must be confirmed by the majority of a special three-member medical panel, who must state that "such incapacity is likely to be permanent."[18] G. L. c. 32, § 85F.

Despite the fact that they are life-long, retirement benefits will normally be awarded by a town as a means of reducing its liability. Retirement pursuant to § 85H terminates any obligation a town may have under § 111F to continue to pay the injured person's usual police and firefighting wages, as well as any additional obligation under the third and

---

[17] Thus it is unclear why Wayland's counsel, when specifically asked by the trial judge on remand if he knew any reason why reference was made in our prior opinion to § 85H, replied, "I honestly don't know," and that "there was never a concession on our part that there was a right [under § 85H] or anything like that." Cf. S.J.C. Rule 3:22, DR 7-102, as amended, 378 Mass. 838 (1979).

[18] In contrast, eligibility for the temporary compensation benefits provided by the third and fourth sentences of § 85H and the paid leave of § 111F only requires a showing that the recipient is "unable to perform the usual duties of his regular occupation" (§ 85H) or "incapacitated for duty" (§ 111F); upon such a showing, eligibility is presumed to continue absent a finding by a designated physician that the recipient is no longer incapacitated.

fourth sentences of § 85H to pay compensation for the person's inability to perform his or her "regular" occupation.[19] Furthermore, if a town has been paying compensation benefits under § 85H, by awarding retirement benefits it can generally reduce its payments during any given pay period by at least[20] one-third, since retirement benefits are fixed at two-thirds of the amount payable as compensation benefits.

In short, § 85H, read as a whole, creates significant fiscal incentives encouraging town officials to retire permanently any of those police officers or firefighters within the scope of the statute who are, in the local officials' opinion, permanently disabled, while at the same time encouraging the denial of such status to those individuals who are likely to return to police or fire work (thus terminating § 111F liability) or to resume the normal duties of their regular occupation (thus ending § 85H temporary compensation benefits).

We conclude that the Legislature intended that towns such as Wayland should possess broad discretion to grant or deny § 85H retirement benefits.[21] The town has considered and rejected Jones' claim for such benefits, and has set forth its reasons for doing so.[22] Decisions such as this are reviewable here only on the basis that the town has abused its discretion; Jones does not argue that the town has done so, and the record would not support such an argument were it to be made.

5. *Conclusion.* For all the foregoing reasons, we conclude, as a matter of law, that Jones was not entitled to benefits under G. L. c. 32, § 85H. The judgment in the Superior Court pursuant to Jones' motion for summary judgment is therefore reversed. Wayland's motion for summary judg-

---

[19] See the identical language regarding retirement contained in the third sentence of G. L. c. 32, § 85H, and the first sentence of G. L. c. 41, § 111F.

[20] Section 111F benefits are also terminated.

[21] The statute does not mandate that compensation benefits be paid before a town may consider disability retirement.

[22] See note 4, *supra.*

ment on Jones' claim pursuant to G. L. c. 32, § 85H, is allowed. Since the parties have agreed that the amount owed by Wayland to Jones under G. L. c. 41, § 111F, consists of $244.53, the case is remanded to the Superior Court for the entry of final judgment in favor of Jones in that amount.[23]

*So ordered.*

---

[23] Despite our comment in the prior opinion, the defendant has again included extensive material in the record appendix which is not properly a part of the record in this proceeding (e.g., irrelevant testimony as to the injury and the full text of our prior opinion). The inclusion of an excessive amount of unnecessary material mandates an order that no costs be taxed against the plaintiff. Mass. R. A. P. 26 (a), 365 Mass. 873 (1974). See *Jones* v. *Wayland,* 374 Mass. 249, 263 (1978).